TINA WOLFSON (SBN 174806)
twolfson@ahdootwolfson.com
DEBORAH DE VILLA (SBN 312564)
ddevilla@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310.474.9111
Facsimile: 310.474.8585

*Attorneys for Plaintiff and the Proposed
Classes*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JOEL EGGLETON, individually and on
behalf of all others similarly situated,

           Plaintiff,

    v.

LOANDEPOT, INC.,

        Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Joel Eggleton ("Plaintiff"), individually and on behalf of all others similarly situated ("Class members"), upon personal knowledge of facts pertaining to themselves and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against Defendant LoanDepot, Inc. ("LoanDepot" or "Defendant").

## NATURE OF THE ACTION

1. Plaintiff brings this class action individually and on behalf of all other individuals who had their sensitive personal information ("Personal Information") disclosed to unauthorized third parties during a data breach compromising LoanDepot in early 2024 (the "Data Breach").

2. On January 4, 2024, LoanDepot reported that it "identified a cybersecurity incident affecting certain of the Company's systems. . . . Though our investigation is ongoing, at this time, the Company has determined that the unauthorized third-party activity included access to certain Company systems and the encryption of data."[1]

3. LoanDepot has not publicly confirmed the nature of the data (e.g., names, addresses, Social Security numbers) disclosed to, or accessed or acquired by, unauthorized third parties in the Data Breach, but public reports indicate that approximately 16.6 million individuals are impacted by the Data Breach.[2]

4. Little information has been made available by LoanDepot about the Data Breach. On its dedicated page for the Data Breach, LoanDepot simply indicated that it is "experiencing a cyber incident"; "working quickly to understand the extent of the incident and taking steps to minimize its impact"; and working with law enforcement as part of its investigation.[3]

_____

[1] *See* Form 8-K, Jan. 4, 2024, available at https://investors.loandepot.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=17170383.

[2] *See* https://media.loandepot.com/news-releases/press-release-details/2024/loanDepot-Provides-Update-on-Cyber-Incident/default.aspx (last accessed Jan. 23, 2024).

[3] *Id.*

5.     Though LoanDepot claims that "[o]ur customers continue to be our top priority,"[4] it provides a paltry amount of information concerning the breach on its website and does not position impacted customers to protect themselves against fraud and identity theft. Indeed, the LoanDepot website is clear that its customers (and perhaps others) may already be experiencing the fallout of the Data Breach, as it has provided a customer care toll-free number for customers to call with questions about the Data Breach.[5]

6.     Defendant was well aware of or should have known of its data security shortcomings. It collects and maintains sensitive Personal Information about its customers and potential customers, including Social Security numbers ("SSNs") and financial information. It requires customers to provide this information in connection with using LoanDepot's services.

7.     Putting aside that large companies that collect sensitive Personal Information are routinely breached and that LoanDepot is aware of this, LoanDepot itself suffered a prior data breach in August 2022, which it disclosed in May 2023. That data breach exposed customer data, too. Nevertheless, Defendant failed to make necessary changes to implement industry standard data privacy measures, again exposing its customers to the risk of being impacted by a breach.

8.     Defendant's failures to ensure that its servers and systems were adequately secure fell far short of its obligations and Plaintiff's and Class members' reasonable expectations for data privacy jeopardized the security of Plaintiff's and Class member's Personal Information, and exposed Plaintiff and Class members to fraud and identity theft or the serious risk of fraud and identity theft.

9.     As a result of Defendant's conduct and the resulting Data Breach, Plaintiff and Class members' privacy has been invaded, their Personal Information is now in the hands of criminals, they have either suffered fraud or identity theft, or face an imminent

---

[4] *Id.*

[5] *Id.*

CLASS ACTION COMPLAINT

and ongoing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## **PARTIES**

10.     Plaintiff Joel Eggleton is an adult citizen of the state of California and resides in Menifee, California. Plaintiff is a customer of LoanDepot. Believing LoanDepot would implement and maintain reasonable security and practices to protect customer Personal Information, Plaintiff provided Personal Information to LoanDepot in connection with seeking lending products and services from, and transacting with, LoanDepot.

11.     Defendant LoanDepot, Inc. is a corporation organized under the laws of the state of Delaware, with a principal place of business located in Irvine, California. LoanDepot is a nonbank holding company that sells mortgage and non-mortgage lending products. The company was founded in 2010 and per its website, LoanDepot is the nation's fifth largest retail mortgage lender and the second largest nonbank retail originator, funding more than $275 billion since inception. LoanDepot claims to have a nationwide team of 6,000-plus members that assists more than 27,000 customers each month.[6]

## **JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class members, the action is a class action in which one or more Class members are citizens of states different from Defendant, and Defendant is not a government entity.

---

[6] *See* https://www.loandepot.com/about (last accessed Jan. 23, 2024).

13.     The Court has personal jurisdiction over Defendant because Defendant has a principal office in Irvine, California, operates in California, conducts other significant business in California, and otherwise has sufficient minimum contacts with and intentionally avails itself of the markets in California.

14.     Venue properly lies in this judicial district because, *inter alia,* LoanDepot has a principal place of business in this district; Defendant transacts substantial business, has agents, and is otherwise located in this district; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### A.     LoanDepot Collects and Stores Personal Information

15.     LoanDepot routinely collects sensitive Personal Information in the process of providing its services and products, which include mortgage and non-mortgage lending products and related financial services (e.g., home mortgages, refinancing, home equity lines of credit, etc.).

16.     This information includes, on information and belief, "phone book" information such as names, email addresses, phone numbers, mailing addresses, but also includes highly sensitive information including SSNs, financial information, tax information, credit history, employment information, drivers' license information, insurance information, and other highly sensitive information. Some or all of this information is typically provided to a lender when a consumer is attempting to secure lending. As a result, lenders like LoanDepot collect and maintain large amounts of highly sensitive Personal Information received during the lending and related application processes.

17.     Defendant is and was aware of the sensitive nature of the Personal Information it collects, and it acknowledges the importance of data privacy. In its Privacy Policy on its website, LoanDepot claims that it "values your patronage and protecting

your personal information is a priority. LoanDepot believes in protecting the confidentiality and security of the information we collect about you . . . ."[7]

18. The Privacy Policy also identifies the policies and procedures LoanDepot purportedly employs to protect sensitive Personal Information:

### Safeguarding Personally Identifiable Information

- We have adopted policies and procedures designed to protect your personally identifiable information from unauthorized use or disclosure.
- We have implemented physical, electronic, and procedural safeguards to maintain confidentiality and integrity of the personal information in our possession and to guard against unauthorized access. These include among other things, procedures for controlling access to your files, building security programs and information technology security measures such as the use of passwords, firewalls, virus prevention and use detection software.
- We continue to assess new technology as it becomes available and to upgrade our physical and electronic security systems as appropriate.
- Our policy is to permit employees to access your personal information only if they have a business purpose for using such information, such as administering, providing or developing our products or services.
- Our policy, which governs the conduct of all of our employees, requires all employees to safeguard personally identifiable information about the consumers and customers we serve or have served in the past.

### loanDepot Security Policy

loanDepot takes steps to safeguard your personal and sensitive information through industry standard physical, electronic, and operational policies and practices. All data that is considered highly confidential data can only be read or written through defined service access points, the use of which is password-protected. The physical security of the data is achieved through a combination of network firewalls and servers with tested operating systems, all housed in a secure facility. Access to the system, both physical and electronic, is controlled and sanctioned by a high-ranking manager.

19. LoanDepot's Privacy Policy is clear that it was aware of the need to safeguard the sensitive Personal Information entrusted to it by consumers as part of the lending application process.

**B.** **The Data Breach**

20. In or about January 4, 2024, a threat actor accessed LoanDepot's systems, gaining access to Plaintiff and Class members' sensitive Personal Information.

---

[7] https://www.loandepot.com/privacypolicy (last accessed Jan. 23, 2024).

21.     In early January 2024, LoanDepot disclosed the Data Breach on its website and in a Form 8-K filing to the United States Securities Exchange Commission (SEC). On its website, LoanDepot disclosed the following:

**January 8, 2024 – 6:00am ET**

loanDepot is experiencing a cyber incident. We have taken certain systems offline and are working diligently to restore normal business operations as quickly as possible. We are working quickly to understand the extent of the incident and taking steps to minimize its impact. The Company has retained leading forensics experts to aid in our investigation and is working with law enforcement. We sincerely apologize for any impacts to our customers and we are focused on resolving these matters as soon as possible.

22.     In the Form 8-K filing dated January 4 (but signed January 8), LoanDepot made the following disclosure:

**Item 8.01. Other Events.**

loanDepot, Inc. (the "Company") recently identified a cybersecurity incident affecting certain of the Company's systems. Upon detecting unauthorized activity, the Company promptly took steps to contain and respond to the incident, including launching an investigation with assistance from leading cybersecurity experts, and began the process of notifying applicable regulators and law enforcement.

Though our investigation is ongoing, at this time, the Company has determined that the unauthorized third party activity included access to certain Company systems and the encryption of data. In response, the Company shut down certain systems and continues to implement measures to secure its business operations, bring systems back online and respond to the incident.

CLASS ACTION COMPLAINT

23.    Following the Data Breach, Defendant's website appeared to be down and displayed the following error message on the customer login page:



# An Important Update.

loanDepot is experiencing a cyber incident that has prompted us to take certain systems offline while we respond to the matter. We are working diligently to return to normal business operations as soon as possible. Recurring automatic payments are processing as expected, but there may be a temporary delay in viewing the posted payment in your payment history. If you are seeking to make a payment, you may do so through our contact center by speaking with an agent at 866-258-6572 from 7 am CT to 7 pm CT Monday through Friday, and 8 am CT to 5 pm CT on Saturday. You may also mail your payment with your loan number to the address on your statement. We apologize for any inconvenience.

24.    LoanDepot continued to provide updates on its website in the weeks that followed that largely pertain to the functionality of its website. These updates provide virtually no information to impacted or potentially impacted persons about the Data Breach. The only update of value to customers was provided on January 22, 2024, when LoanDepot confirmed that it is still investigating the Data Breach, 16.6 million individuals are impacted, and impacted individuals will receive notification and receive some credit monitoring and identity theft offering.[8] LoanDepot also provided consumers with a toll-free hotline to call in the event a consumer has a question about the incident.[9]

---

[8] https://media.loandepot.com/news-releases/press-release-details/2024/loanDepot-Provides-Update-on-Cyber-Incident/default.aspx (last accessed Jan. 23, 2024).

[9] https://loandepot.cyberincidentupdate.com (last accessed Jan. 23, 2024).

**C.** **Impact of the LoanDepot Data Breach**

25.     The actual extent and scope, and the impact, of the Data Breach on LoanDepot's customers (or other affiliated persons) remains uncertain. Unfortunately for Plaintiff and Class members, the damage is already done because their sensitive Personal Information is confirmed by LoanDepot to have been disclosed to unauthorized persons during the Data Breach.

26.     LoanDepot knew or should have known that its affected IT systems and/or servers are unsecure and do not meet industry standards for protecting highly sensitive customer Personal Information. On information and belief, LoanDepot failed to timely make changes to its data security systems, privacy policies, and its IT systems and servers, exposing its customers' Personal Information to the risk of theft, identity theft, and fraud.

27.     The harm caused to Plaintiff and Class members by the Data Breach has already been suffered. Even if companies, like LoanDepot, that are impacted by ransomware attacks—and the Data Breach has been reported to be such an attack—pay the ransom, there is no guarantee that the criminals making the ransom demands will suddenly act honorably and destroy the sensitive Personal Information. In fact, there is no motivation for them to do so, given the burgeoning market for sensitive Personal Information on the dark web.

28.     The Data Breach creates a heightened security concern for Plaintiff and Class members because their SSNs, financial information, and other sensitive information was potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of his SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

29.     Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin

to having a master key to the gates of fraudulent activity. Per the United States Attorney General, Social Security numbers "can be an identity thief's most valuable piece of consumer information."[10] TIME quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[11]

30.     LoanDepot had a duty to keep Plaintiff's and Class members' Personal Information confidential and to protect it from unauthorized disclosures. Plaintiff and Class members provided their Personal Information to LoanDepot with the understanding that LoanDepot would comply with its Privacy Policy and its obligations to keep such information confidential and secure from unauthorized disclosures.

31.     Defendant's data security obligations were particularly important given the substantial increase in data breaches in recent years, which are widely known to the public and to anyone in LoanDepot's industry of mortgage and non-mortgage lending.

**D.     Theft of Personal Information Has Serious Consequences for Victims**

32.     Data breaches are by no means new and they should not be unexpected. Business Insider has noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers. . . . Many of them were caused by flaws in . . . systems either online or in stores."[12] It is well known amongst companies that store sensitive personally

---

[10] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DEP'T OF JUSTICE, (Sept. 19, 2006),
https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html.

[11] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (August 5, 2019),
https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

[12] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1 (last accessed Jan. 23, 2024).

identifying information that sensitive Personal Information—like SSNs, financial information, tax information, etc.—is valuable and frequently targeted by criminals.

33.     These types of attacks should be anticipated by companies that store sensitive and personally identifying information, like LoanDepot, and these companies must ensure that data privacy and security practices and protocols are adequate to protect against and prevent known and expected attacks.

34.     Theft of Personal Information is serious. The Federal Trade Commission has warned consumers that identity thieves use Personal Information to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[13]

35.     Indeed, with access to an individual's Personal Information, criminals can do more than simply empty a victim's bank account. They can also commit all manner of fraud, including: obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and SSN to obtain government benefits; obtain lending or lines of credit; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[14]

36.     According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card

---

[13] *See* Federal Trade Commission, *What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Jan. 23, 2024).

[14] *See* FEDERAL TRADE COMMISSION, WARNING SIGNS OF IDENTITY THEFT, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Jan. 23, 2024).

CLASS ACTION COMPLAINT

or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[15]

37.     Personal Information is a valuable property right.[16] The value of sensitive personal information as a commodity is measurable.[17] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[18]

38.     Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs, financial information, driver's license numbers, and other Personal Information directly on various illegal websites making the information publicly available, often for a price. This information from various breaches, including the information exposed in the Data

---

[15] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN, (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/ (last accessed Jan. 23, 2024).

[16] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[17] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (April 28, 2014), http://www.medscape.com/viewarticle/824192.

[18] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD ILIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

39.     Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

40.     Consumers place a high value on the privacy of sensitive data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[19]

41.     There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[20]

42.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Personal Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

---

[19] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

[20] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

CLASS ACTION COMPLAINT

43. Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[21]

44. It is within this context that Plaintiff and all other Class members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

**E.** **LoanDepot Failed to Act in the Face of a Known Risk of a Data Breach**

45. Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable (similar) data breaches, Defendant failed to take reasonable steps to adequately protect Personal Information, leaving its clients (and potentially others) exposed to risk of fraud and identity theft.

46. LoanDepot is, and at all relevant times has been, aware that the sensitive Personal Information it handles and stores in connection with providing lending services and products is highly sensitive. As a company that provides requires highly sensitive and identifying information in connection with providing lending products and services, LoanDepot is aware of the importance of safeguarding that information and protecting its systems and products from security vulnerabilities.

47. LoanDepot was aware, or should have been aware, of regulatory and industry guidance regarding data security, and was alerted to the risk associated with failing to ensure that Personal Information was adequately secured.

48. Despite the well-known risks of hackers and cybersecurity intrusions, Defendant failed to employ adequate data security measures in a meaningful way in order to prevent breaches, including the Data Breach.

---

[21] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.

49.     The security flaws inherent to Defendant's IT systems or servers run afoul of industry best practices and standards. Had Defendant adequately protected and secured its servers or systems, and the sensitive Personal Information stored therein, it could have prevented the Data Breach.

50.     Despite that LoanDepot was on notice of the very real possibility of data theft, including through a prior data breach, it still failed to make necessary changes, and permitted a massive intrusion to occur that resulted in disclosure of Plaintiff's and nearly 17 million other Class members' Personal Information to criminals.

51.     Defendant permitted Class members' Personal Information to be compromised and disclosed to criminals by failing to take reasonable steps against an obvious threat.

52.     Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[22]

53.     As a result of the events detailed herein, Plaintiff and Class members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Personal Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Personal Information.

---

[22] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, REUTERS (May 30, 2017), https://www.reuters.com/article/idUSKBN18M2BY/.

54. Victims of the Data Breach have likely already experienced harms and are subject to an imminent and ongoing risk of harm, including identity theft and fraud.

55. As a result of LoanDepot's failure to ensure that its impacted systems and servers were protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiff's and Class members' privacy has been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## CLASS ALLEGATIONS

56. Plaintiff brings this action on behalf of himself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> **Nationwide Class**
> All residents of the United States who were impacted by the LoanDepot Data Breach, including all persons who were sent notice by LoanDepot that their Personal Information was compromised as a result of the Data Breach.

> **California Class**
> All residents of the state of California who were impacted by the LoanDepot Data Breach, including all persons who were sent notice by LoanDepot that their Personal Information was compromised as a result of the Data Breach.

57. Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court Staff; and (2) LoanDepot, its subsidiaries, parent companies, successors, predecessors, and any entity in which LoanDepot, or its parents, have a controlling interest, and its current or former officers and directors.

58. **Numerosity**: While the precise number of Class members has not yet been determined, members of the Classes are so numerous that their individual joinder is impracticable, as the proposed Class(es) appear to include at least 16.6 million members who are geographically dispersed.

59. **Typicality**: Plaintiff's claims are typical of Class members' claims. Plaintiff and all Class members were injured through Defendant's uniform misconduct,

and Plaintiff's claims are identical to the claims of the Class members they seek to represent. Accordingly, Plaintiff's claims are typical of Class members' claims.

60. **Adequacy**: Plaintiff's interests are aligned with the Class(es) Plaintiff seeks to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously. The Class(es)' interests are well-represented by Plaintiff and undersigned counsel.

61. **Superiority**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class member's claims. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class members individually to effectively redress Defendant's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

62. **Commonality and Predominance:** The following questions common to all Class members predominate over any potential questions affecting individual Class members:

- whether Defendant engaged in the wrongful conduct alleged herein;
- whether Defendant's data security practices resulted in the disclosure of Plaintiff's and other Class members' Personal Information and the Data Breach;
- whether Defendant violated privacy rights and invaded Plaintiff's and Class members' privacy; and

- whether Plaintiff and Class members are entitled to damages, equitable relief, or other relief and, if so, in what amount.

63. Given that Defendant engaged in a common course of conduct as to Plaintiff and the Classes, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

64. **Injunctive and Declaratory Relief**: Consistent with Fed. R. Civ. P. 23(b)(2), Defendant, through its conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the class as a whole.

## CAUSES OF ACTION

### COUNT I
### Negligence

65. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

66. Defendant was entrusted with, stored, and otherwise had access to the Personal Information of Plaintiff and Class members.

67. Defendant knew, or should have known, of the risks inherent to storing the Personal Information of Plaintiff and Class members, and to not ensuring that its servers and systems, and the Personal Information, was secure. These risks were reasonably foreseeable to Defendant, including because Defendant has previously experienced a data breach.

68. Defendant owed duties of care to Plaintiff and Class members whose Personal Information had been entrusted to it.

69. Defendant breached its duties to Plaintiff and Class members by failing to provide fair, reasonable, or adequate data security. Defendant had a duty to safeguard Plaintiff's and Class members' Personal Information and to ensure that their adequately protected Personal Information. Defendant breached this duty.

70. LoanDepot's duty of care arises from its knowledge that its customers entrust it with highly sensitive Personal Information that LoanDepot is required to, and represents that it will, handle securely. Indeed, on its website, LoanDepot commits to data privacy in its Privacy Policy, including safeguarding sensitive Personal Information.

71. Only LoanDepot was in a position to ensure that its systems, servers, and services were sufficient to protect against breaches and the harms that Plaintiff and Class members have now suffered.

72. A "special relationship" exists between Defendant, on the one hand, and Plaintiff and Class members, on the other hand. Defendant entered into a "special relationship" with Plaintiff and Class members by agreeing to accept, store, and have access to sensitive Personal Information provided by Plaintiff and Class members in connection with their attempts or efforts to secure lending.

73. But for Defendant's wrongful and negligent breach of their duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

74. Defendant acted with wanton disregard for the security of Plaintiff's and Class members' Personal Information.

75. The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known it was failing to meet these duties, and that Defendant's breach would cause Plaintiff and Class members to experience the foreseeable harms associated with the exposure of their Personal Information.

76. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class members have been harmed and face an imminent and ongoing risk of harm.

77. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II
### Negligence Per Se

78.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

79.     Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), LoanDepot had a duty to provide adequate data security practices in connection with safeguarding Plaintiff's and Class members' Personal Information.

80.     Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), LoanDepot had a duty to provide adequate data security practices to safeguard Plaintiff's and Class members' Personal Information.

81.     Defendant breached its duties to Plaintiff and Class members under the Federal Trade Commission Act (15 U.S.C. § 45), the Gramm-Leach-Bliley Act (15 U.S.C. §§ 6801, *et seq.*) ("GLBA"), the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, *et seq.* ("CCPA"), Cal. Civ. Code §§ 1798.80, *et seq.*, among other statutes, by failing to provide fair, reasonable, or adequate data security in connection with the sale of lending products and services in order to safeguard Plaintiff's and Class members' Personal Information.

82.     Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

83.     But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

84.     The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known that it was failing to meet its duties, and that a breach would cause Plaintiff and Class members to experience the foreseeable harms associated with the exposure of their Personal Information.

85.     As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have been harmed and face an imminent and ongoing risk of harm.

86.     As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III
## Breach of Implied Contract

87.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

88.     LoanDepot provided or provides mortgage and non-mortgage lending services to Plaintiff and Class members, or Plaintiff and Class members provided their Personal Information to LoanDepot as prospective customers or in some other capacity.

89.     In connection with their business relationship, Plaintiff and Class members entered into implied contracts with LoanDepot.

90.     Pursuant to these implied contracts, Plaintiff and Class members provided LoanDepot with their Personal Information. In exchange, LoanDepot agreed, among other things: (1) to take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' Personal Information; and (2) to protect Plaintiff's and Class members' Personal Information in compliance with federal and state laws and regulations and industry standards.

91.     The protection of Personal Information was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and LoanDepot, on the other hand. Had Plaintiff and Class members known that LoanDepot would not adequately protect its customers' Personal Information they would not have done business with LoanDepot.

92.     Plaintiff and Class members performed their obligations under the implied contract when they provided LoanDepot with their Personal Information.

93. Necessarily implicit in the agreements between Plaintiff/Class members and LoanDepot was LoanDepot's obligation to take reasonable steps to secure and safeguard Plaintiff's and Class members' Personal Information.

94. LoanDepot breached its obligations under its implied contracts with Plaintiff and Class members by failing to implement and maintain reasonable security measures to protect their Personal Information.

95. LoanDepot's breach of its obligations of its implied contracts with Plaintiff and Class members directly resulted in the Data Breach.

96. The damages sustained by Plaintiff and Class members as described above were the direct and proximate result of LoanDepot's material breaches of its agreements.

97. Plaintiff and other Class members were damaged by LoanDepot's breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Personal Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Personal Information has been breached; (v) they were deprived of the value of their Personal Information, for which there is a well-established national and international market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the effects of the breach, including the increased risks of identity theft they face and will continue to face.

## COUNT IV
### Breach of Fiduciary Duty

98. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

99. A relationship existed between Plaintiff and Class members and Defendant in which Plaintiff and Class members put their trust in Defendant to protect the Personal Information of Plaintiff and Class members and Defendant accepted that trust.

100. Defendant breached the fiduciary duties that they owed to Plaintiff and Class members by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing to protect the PII of Plaintiff and Class members.

101. Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiff and Class members.

102. But for Defendant's breach of fiduciary duty, the damage to Plaintiff and Class members would not have occurred.

103. Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and Class members.

104. As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff are entitled to and demand actual, consequential, and nominal damages, and injunctive relief.

**COUNT V**
**Violations of the California Customer Records Act**
**Cal. Civ. Code §§ 1798.80, *et seq.* ("CCRA")**

105. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

106. This claim is pleaded on behalf of Plaintiff and the California class.

107. "[T]o ensure that personal information about California residents is protected," the California legislature enacted Civil Code § 1798.81.5, which requires that any business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

108. By failing to implement reasonable measures to protect Plaintiff's Personal Information, Defendants violated Civil Code § 1798.81.5.

109. In addition, by failing to promptly notify all affected Class members that their Personal Information had been exposed, Defendant violated Civil Code § 1798.82.

110. As a direct or proximate result of Defendant's violations of Civil Code §§ 1798.81.5 and 1798.82, Plaintiff and California Class members were (and continue to be) injured and have suffered (and will continue to suffer) the damages and harms described herein.

111. In addition, by violating Civil Code §§ 1798.81.5 and 1798.82, Defendant "may be enjoined" under Civil Code Section 1798.84(e).

112. Defendant's violations of Civil Code §§ 1798.81.5 and 1798.82 also constitute unlawful acts or practices under the UCL, which affords the Court discretion to enter whatever orders may be necessary to prevent future unlawful acts or practices.

113. Plaintiff accordingly requests that the Court enter an injunction requiring Defendant to implement and maintain reasonable security procedures, including, but not limited to: (1) ordering that Defendant utilize strong industry standard data security measures for the collection, storage, and retention of customer data; (2) ordering that Defendant, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis; (3) ordering that Defendant engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (4) ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures; (5) ordering that Defendant, consistent with industry standard practices, segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems are compromised, hackers cannot gain access to other portions of those systems; (6) ordering that Defendant purge, delete, and destroy in a reasonably secure manner Class member data not necessary for its provisions of services; (7) ordering that Defendant, consistent with industry standard practices, conduct regular database scanning and security checks; (8)

ordering that Defendant, consistent with industry standard practices, evaluate all software, systems, or programs utilized for collection and storage of sensitive Personal Information for vulnerabilities to prevent threats to customers; (9) ordering that Defendant, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (10) ordering Defendant to meaningfully educate its customers about the threats they face as a result of the loss of their Personal Information.

114. Plaintiff further requests that the Court require Defendant LoanDepot to identify and notify all members of the Class who have not yet been informed of the Data Breach, and to notify affected persons of any future data breaches by email within 24 hours of discovery of a breach or possible breach and by mail within 72 hours.

## COUNT VI
### Violations of the California Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")

115. Plaintiff reallege and incorporate all previous allegations as though fully set forth herein.

116. This claim is pleaded on behalf of Plaintiff and the California class.

117. Defendant engaged in unfair, unlawful, and fraudulent business practices in violation of the UCL.

118. Plaintiff suffered injury in fact and lost money or property as a result of Defendant's alleged violations of the UCL.

119. The acts, omissions, and conduct of Defendant as alleged constitute a "business practice" within the meaning of the UCL.

### **Unlawful Prong**

120. Defendant violated the unlawful prong of the UCL by violating, without limitation, the CCPA, CCRA, GLBA, and FTC Act as alleged herein.

121.   Defendant LoanDepot violated the unlawful prong of the UCL by failing to honor the terms of its implied contracts with Plaintiff and Class members in California, as alleged herein.

122.   Defendant's conduct also undermines California public policy—as reflected in statutes like the California Information Practices Act, Cal. Civ. Code §§ 1798, *et seq.*, the CCPA concerning consumer privacy, and the CCRA concerning customer records— which seek to protect customer and consumer data and ensure that entities who solicit or are entrusted with personal data utilize reasonable security measures.

**Unfair Prong**

123.   Defendant's acts, omissions, and conduct also violate the unfair prong of the UCL because Defendant's acts, omissions, and conduct, as alleged herein, offended public policy and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiff and other Class members in California. The gravity of Defendant's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendant's legitimate business interests, other than Defendant's conduct described herein.

124.   Defendant's failure to utilize, and to disclose that they do not utilize, industry standard security practices, constitutes an unfair business practice under the UCL. Defendant's conduct is unethical, unscrupulous, and substantially injurious to the Class. While Defendant's competitors have spent the time and money necessary to appropriately safeguard their products, service, and customer information, Defendant has not—to the detriment of its customers and to competition.

**Fraudulent Prong**

125.   By failing to disclose that it does not enlist industry standard security practices, all of which rendered Class members particularly vulnerable to data breaches, Defendant LoanDepot engaged in UCL-violative practices.

126. A reasonable consumer would not have transacted with LoanDepot if they knew the truth about its security procedures. By withholding material information about its security practices, LoanDepot was able to obtain customers who provided and entrusted their Personal Information in connection with transacting business with LoanDepot. Had Plaintiff known the truth about LoanDepot's security procedures, Plaintiff would not have done business with LoanDepot.

127. As a result of Defendant's violations of the UCL, Plaintiff and Class members in California are entitled to injunctive relief including, but not limited to: (1) ordering that Defendant utilize strong industry standard data security measures for the collection, storage, and retention of customer data; (2) ordering that Defendant, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis; (3) ordering that Defendant engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (4) ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures; (5) ordering that Defendant, consistent with industry standard practices, segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems are compromised, hackers cannot gain access to other portions of those systems; (6) ordering that Defendant purge, delete, and destroy in a reasonably secure manner Class member data not necessary for its provisions of services; (7) ordering that Defendant, consistent with industry standard practices, conduct regular database scanning and security checks; (8) ordering that Defendant, consistent with industry standard practices, evaluate all software, systems, or programs utilized for collection and storage of sensitive Personal Information for vulnerabilities to prevent threats to customers; (9) ordering that Defendant, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response

1  to a breach; and (10) ordering Defendant to meaningfully educate its customers about the

2  threats they face as a result of the loss of their Personal Information.

3  128.  As a result of Defendant's violations of the UCL, Plaintiff and Class

4  members have suffered injury in fact and lost money or property, as detailed herein. They

5  agreed to transact business with LoanDepot or made purchases or spent money that they

6  otherwise would not have made or spent, had they known the truth. Class members lost

7  Personal Information, which is their property. Class members lost money as a result of

8  dealing with the fallout of and attempting mitigate harm arising from the Data Breach.

9  129.  Plaintiff requests that the Court issue sufficient equitable relief to restore

10  Class members in California to the position they would have been in had Defendant not

11  engaged in violations of the UCL, including by ordering restitution of all funds that

12  Defendant may have acquired from Plaintiff and Class members in California as a result

13  of those violations.

### COUNT VII
### Invasion of Privacy (Intrusion Upon Seclusion)

130.  Plaintiff reallege and incorporate all previous allegations as though fully set forth herein.

131.  Plaintiff and Class members had a reasonable expectation of privacy in the Personal Information that Defendant disclosed without authorization.

132.  By failing to keep Plaintiff's and Class members' Personal Information safe, knowingly employing inadequate data privacy policies and protocols, and disclosing Personal Information to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiff's and Class members' privacy by, *inter alia*:

    a.    intruding into Plaintiff's and Class members' private affairs in a manner that would be highly offensive to a reasonable person; and

    b.    invading Plaintiff's and Class members' privacy by improperly using their Personal Information properly obtained for a specific purpose for another purpose, or disclosing it to some third party;

c. failing to adequately secure Personal Information from disclosure to unauthorized persons;

d. enabling the disclosure of Plaintiff's and Class members' Personal Information without consent.

133. Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class members' position would consider its actions highly offensive.

134. Defendant knew that its IT systems and servers were vulnerable to data breaches prior to the Data Breach.

135. Defendant invaded Plaintiff's and Class members' right to privacy and intruded into Plaintiff's and Class members' private affairs by disclosing their Personal Information to unauthorized persons without their informed, voluntary, affirmative, and clear consent.

136. As a proximate result of such unauthorized disclosures, Plaintiff's and Class members' reasonable expectations of privacy in their Personal Information was unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiff's and Class members' protected privacy interests.

137. In failing to protect Plaintiff's and Class members' Personal Information, and in disclosing Plaintiff's and Class members' Personal Information, Defendant acted with malice and oppression and in conscious disregard of Plaintiff's and Class members' rights to have such information kept confidential and private.

138. Plaintiff seeks injunctive relief on behalf of the Class, restitution, and all other damages available under this Count.

**COUNT VIII**
**Unjust Enrichment**

139. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

140. This claim is pleaded in the alternative to the implied contract claim.

141. LoanDepot has profited and benefited from the monies or fees paid and the Personal Information provided by Plaintiff and Class members to receive services from LoanDepot.

142. LoanDepot has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiff and Class members did not receive services of the quality, nature, fitness, or value represented by LoanDepot and that reasonable consumers expected.

143. LoanDepot has been unjustly enriched by its withholding of and retention of these benefits, at the expense of Plaintiff and Class members.

144. Equity and justice militate against permitting LoanDepot to retain these profits and benefits.

145. Plaintiff and Class members suffered injury as a direct and proximate result of LoanDepot's unjust enrichment and seek an order directing LoanDepot to disgorge these benefits and pay restitution to Plaintiff and Class members.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of the Classes, by and through undersigned counsel, respectfully request that the Court grant the following relief:

A. Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as class representative and undersigned counsel as class counsel;

B. Award Plaintiff and Class members actual and statutory damages, punitive damages, and monetary damages to the maximum extent allowable;

C. Award declaratory and injunctive relief as permitted by law or equity to assure that Class members have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

D. Award Plaintiff and Class members pre-judgment and post-judgment interest to the maximum extent allowable;

CLASS ACTION COMPLAINT

1    E.    Award Plaintiff and Class members reasonable attorneys' fees, costs, and
2  expenses, as allowable; and
3    F.    Award Plaintiff and Class members such other favorable relief as allowable
4  under law or at equity.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: January 24, 2024                    Respectfully submitted,

_/s/ Tina Wolfson_
TINA WOLFSON (SBN 174806)
_twolfson@ahdootwolfson.com_
DEBORAH DE VILLA (SBN 312564)
_DDEVILLA@AHDOOTWOLFSON.COM_
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310.474.9111
Facsimile:   310.474.8585


_Attorneys for Plaintiff and the Proposed Classes_

CLASS ACTION COMPLAINT